```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACK IPPOLITO, JACK IPPOLITO, on behalf
of his infant son ANTHONY IPPOLITO, and
STEVE MIELCAREK,

                        Plaintiffs,              02-CV-6645T

             v.                                  DECISION
                                                 and ORDER
MICHAEL MORENCY, MICHAEL MANN, MICHAEL
RIEGER, WILLIAM BENNETT, STEVEN SCOTT,
TERRANCE BROADBENT, JOSEPH RIEGER, DOUGLAS
ROSE, CHRISTOPHER FAY, ROBERT CLANCY,
CHARLES KORHERR, MARK SOTIR, JOHN BILLITIER,
DENNIS KOHLMEIER, BRIDGET O'HARA, JOHN DOE,
MARY DOE, ANDREW MELONI, SCOTT PARSONS,
MONROE COUNTY, MONROE COUNTY SHERIFF'S
OFFICE, TOWN OF WEBSTER, and TOWN OF
WEBSTER POLICE DEPARTMENT

                        Defendants.
_____
```

## INTRODUCTION

Plaintiffs Jack Ippolito, ("Ippolito"), Steve Mielcarek, ("Mielcarek"), and Jack Ippolito on behalf of his son Anthony Ippolito, bring this action pursuant to 42 U.S.C. § 1983 alleging that their civil rights were violated by the defendants County of Monroe, New York; the Monroe County Sheriff's Office; Monroe County Sheriff Andrew Meloni; the Town of Webster, New York; the Town of Webster Police Department, and several officers of the Monroe County Sheriff's Department and Town of Webster Police Department. Specifically, plaintiffs claim that they were subject to an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the Constitution; were denied the right to be informed of charges against them in violation of the Sixth and

Fourteenth Amendments to the Constitution, and were denied due process and equal protection under the law in violation of the Fourteenth Amendment to the Constitution.

Defendants move for summary judgment on grounds that there are no material facts in dispute, and that they are entitled to judgment as a matter of law.  Specifically, defendants contend that, inter alia: (1) there was probable cause to arrest the plaintiffs, and therefore there was no violation of their rights to be free from an unreasonable search and seizure; (2) plaintiffs were not entitled to be informed of the charges against them because no charges were formally brought; and (3) the plaintiffs were not deprived of any right to due process or equal protection.

Plaintiffs oppose the defendants' motions, and cross-move for summary judgment in their favor, and to amend the complaint to add claims of excessive use of force in violation of the United States Constitution, and claims for assault and battery, false arrest, and false imprisonment under New York Law.

For the reasons set forth below, I hereby grant defendants' motions for summary judgment, deny plaintiffs' motion for summary judgment, deny plaintiffs' motion to amend the Complaint, and dismiss plaintiffs' complaint with prejudice.

## BACKGROUND

On the evening of October 15, 2000, Jack Ippolito, his son Anthony Ippolito, Steve Mielcarek, and Mielcarek's brother Stan Mielcarek traveled to the Bay Centre Shopping Plaza on Bay Road in

the Town of Webster, New York, for the purpose of removing scrap metal from two dumpsters owned by Goodwill Industries. The dumpsters were located behind the Goodwill store, and were secured in a rectangular fenced in area, accessible on one side by a gate. Although the gate had in the past been secured by a lock, locks were often cut off by trespassers, and on the night of October 15, 2000, there was no lock securing the gate. The four men proceeded to open the gate and rummage through the dumpsters.

At approximately 9:20 p.m., a citizen identifying himself as Michael Smith, ("Smith") called 911 to report that he had observed four men entering the dumpster area; that one of the men was holding a gun to the back of one of the other men; and that one of the men was screaming. The caller allegedly gave his location as a Mobil gas station on Bay Road, near the Plaza, and stated that he would remain there if needed by the police. Although the police attempted to find Mr. Smith after their encounter with the plaintiffs, they were unable to do so.

The 911 operator issued a voice dispatch to Monroe County Sheriff Deputy Michael Morency, and issued a text dispatch indicating that four men, one with a gun, had been observed entering the fenced-in dumpster area, and that one of the men was screaming. Monroe County Deputy Sheriff Michael Rieger ("Deputy Rieger"), heard the dispatch and responded to the call because he was only one to one and half minutes away.

Upon arriving at the scene, Deputy Rieger deactivated his lights and siren so as to not alert any suspects to his approach. He observed the shapes of people moving within the fenced-in dumpster area, and based on the report that at least one of the men was carrying a gun, he exited his vehicle with his shotgun drawn, identified himself as a police officer, and ordered the suspects to exit the fenced area with their hands up. Plaintiffs and Stan Mielcarek complied with Deputy Rieger's order, and exited the dumpster area. Once all suspects were in the paved parking lot area, Deputy Rieger ordered the suspects to lay face down on the ground with their hands above their heads. At this time, Ippolito informed Rieger that he was a retired police officer, that he was carrying a gun, and that he had a license to carry the gun. Once the suspects were on the ground, officers who had recently arrived at the scene began to handcuff and detain the suspects in police vehicles. According to Officer Rieger, he believed that there was probable cause to arrest the suspects on charges of Criminal Trespass in the Third Degree.

Once the plaintiffs were detained, Deputy Rieger contacted Scott Ritchie, who was Director of Human Resources for Goodwill at that time. Deputy Rieger inquired as to whether or not Goodwill intended to press charges against the suspects, and informed Ritchie that if Goodwill did intend to press charges, Ritchie would be required to sign a sworn statement. Ritchie, who lived over 70 miles away in Williamsville, New York, declined to press charges.

Once Richie declined to press charges, plaintiffs were released from custody with no charges brought against them. According to the plaintiffs, they were held for well over one hour, and spent most of that time handcuffed. Defendants contend that the plaintiffs were released from custody within 40 to 50 minutes.

## DISCUSSION

### I.   The Parties' Motions

The parties move for summary judgment on grounds that no material issue of fact exists to be tried, and that as a matter of law, they are entitled to summary judgment. Defendants contend that because there was probable cause to arrest the plaintiffs on trespassing charges, plaintiffs can not state a claim for an unlawful arrest or search or seizure, and cannot maintain a claim for violation of their rights to due process or equal protection.

Plaintiffs move for summary judgment on grounds that as a matter of law, they were unlawfully arrested and detained by the defendants. Plaintiffs also seek to amend the Complaint to add causes of action for excessive use of force in violation of the United States Constitution, as well as claims of assault and battery, false arrest, and false imprisonment under New York Law.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering a

motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54 (2nd Cir. 1997). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Annis v. County of Westchester, 136 F.3d 239, 247 (2nd Cir. 1998).

II. Fourth Amendment Claims

Plaintiffs allege that their Fourth Amendment rights to be free from an unreasonable search and seizure were violated when the defendants handcuffed them and detained them for more than an hour in police vehicles pending a determination as to whether or not charges would be brought against them. For purposes of this motion, viewing the facts in a light most favorable to the plaintiffs, I shall consider the October 15, 2000 detention of the plaintiffs to be an arrest.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2nd Cir. 1996) (citations omitted); Mandina v. City of Yonkers, 1998 WL 637471, *3 (S.D.N.Y., Sept. 16, 1998). "To succeed on a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" Mandina, 1998 WL 637471 at *3 (quoting Bernard v. United States, 25 F.3d 98, 102 (2nd Cir. 1994). For purposes of this motion, there is no dispute that the plaintiffs were confined, were aware of their confinement, and objected to their confinement. The only question is whether or not the confinement was privileged.

Confinement by a law enforcement agency is privileged under New York law where there is probable or reasonable cause to arrest the person confined. "Probable cause to arrest 'constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983.'" Mandina, 1998 WL 637471 at *3 (citing Weyant, 101 F.3d at 852 (internal citation omitted)).

"Probable cause exists where officers 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person arrested has committed or is committing a crime.'" Mandina, 1998 WL 637471 at *3 (quoting Weyant, 101 F.3d at 852). This is an objective standard, and where there are no material issues of fact in dispute, the issue of probable cause may properly be disposed of on motion for summary judgment. Parkin v. Cornell University, 78 N.Y.2d 523, 529 (1991). Viewing the facts in the light most favorable to the plaintiffs, I find that defendants had probable cause to arrest the plaintiffs for Criminal Trespass in the Third Degree.

Under the New York Penal Law, a person is guilty of Criminal Trespass in the Third Degree where the person, <u>inter</u> <u>alia</u>, "knowingly enters or remains unlawfully in a building or upon real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders . . . ." N.Y. Penal Law § 140.10. Based on the statutory elements of this crime, a reasonable officer with the knowledge that Deputy Rieger had at the time he encountered the plaintiffs would have believed that the plaintiffs were in violation of Third Degree Criminal Trespass. Deputy Rieger was often assigned to the area in which the dumpsters were located, and knew that the dumpsters were secured in a locked, fenced in area. <u>See</u> July 23, 2003 Deposition Testimony of Michael Rieger, attached as Exhibit 23 to the Affidavit of Stanley Sliwa at p. 51, lines 13-14 (testifying that the fenced-in area "usually has a chain with a lock on it"). Deputy Rieger observed the plaintiffs within the fenced-in area, and it was therefore reasonable for Deputy Rieger to believe that the plaintiffs had broken into the area. Moreover, because Deputy Rieger was operating under information relayed by a witness that one of the men was pointing a gun at one of the other men, (information which, at least with respect to Ippolito's possession of a gun, proved to be accurate) Rieger had reason to believe that criminal activity was afoot; that the plaintiffs were within the fenced-off area illegally; and that detention of the plaintiffs was warranted while it could be

ascertained whether or not Goodwill wanted to press criminal charges.

Plaintiffs, however, argue that their arrest was illegal because they did not, and could not as a matter of law have committed the crime of Criminal Trespass in the Third Degree. In support of this claim, plaintiffs allege that because there were no "no trespassing" signs in the dumpster area, because they had never been told by an agent of Goodwill that they were trespassing, and because the gate to the dumpsters was unlocked, it was legally impossible for them to commit the crime of Criminal Trespass in the Third Degree.

Plaintiffs' argument, however, is inapposite, as the question of whether or not plaintiffs could have been <u>convicted</u> of criminal trespass is irrelevant to the determination of whether or not it was reasonable to <u>detain or arrest plaintiffs on those charges</u>. Proof of illegal activity beyond a reasonable doubt is not necessary to establish probable cause to arrest. <u>Hahn v. County of Otsego</u>, 820 F.Supp. 54, 55 (N.D.N.Y. 1993). Rather, a police officer may, under the Fourth Amendment, arrest a suspect based on a "mere probability of criminal activity, based on the totality of the circumstances") . <u>Hahn</u>, 820 F.Supp. at 55 (N.D.N.Y. 1993). As stated above, I find that a reasonable officer, armed with the information possessed by Deputy Rieger at the time the plaintiffs were taken into custody, would have believed that the plaintiffs had committed the crime of Criminal Trespass in the Third Degree,

and therefore detention of the plaintiffs pending a determination as to whether or not the victim of the trespass wished to press charges was warranted.

   III. Sixth Amendment Claims

Plaintiffs concede that there was no violation of their rights under the Sixth Amendment to the United States Constitution to be advised of the criminal charges brought against them, and therefore withdraw their Sixth Amendment Claims.  Plaintiffs do, however, allege that their rights to be advised of the reason for their arrest under the Fifth and Fourteenth Amendments were violated. Neither the Fourth, Fifth, Sixth nor Fourteenth Amendments, however, require that an officer inform an arrestee of the reason for the arrest prior to any formal charges being brought by the governmental authority with discretion to prosecute the arestee. See Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987)(no right under the Fourth or Sixth Amendments to be informed of reason for arrest prior to formal charge being brought); Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000)(right to be informed of charges does not attach until formal charges have been brought). I therefore find that plaintiffs have failed to state a cause of action for the alleged deprivation of a constitutional right resulting from the failure of any officer to specify the reason for the arrest.

IV. <u>Due Process and Equal Protection</u>

Plaintiffs allege that their due process and equal protection rights were violated in connection with their October 15, 2000 arrest and detention. I find, however, that because the arrest and detention of the plaintiffs was privileged, plaintiffs have failed to state a cause of action for violation of their due process or equal protection rights.

V. <u>Motion to Amend the Complaint</u>.

Plaintiffs seek to amend the Complaint to add causes of action for excessive use of force in violation of the United States Constitution, and claims of assault and battery, false arrest, and false imprisonment under New York Law. However, because the statutes of limitations for these potential causes of action have expired, I deny plaintiffs' motion to amend.

The events giving rise to plaintiffs' potential causes of action occurred on October 15, 2000. The motion to amend the Complaint was made on November 1, 2004, more than three years after the date on which the events place. The statute of limitations for plaintiffs' excessive use of force claims, however, is three years. <u>Tapia-Ortiz v. Doe</u>, 171 F.3d 150 (2nd Cir. 1999). The limitations periods for plaintiffs' state law claims range from one year to one year and 90 days. N.Y. CPLR § 215; N.Y. Municipal Law § 50i(1); 50-j(3). Because the limitations period for these causes of action

have passed, I deny plaintiffs' motion to amend.  I further deny plaintiffs' motion on grounds that no proposed amended complaint was filed with the motion to amend, and that the motion to amend was filed approximately 9 months after the deadline for filing motions to amend and therefore, would prejudice the defendants.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted, plaintiffs' motions for summary judgment and to amend are denied, and plaintiffs' claims are dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
     MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         August   08  , 2005